# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| D. ANGELINA KENNEDY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 17-00114-KD-N |
| | ) | |
| WARREN PROPERTIES, LLC, *et al.*, | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATIONS

This action is before the Court on the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. 19) filed by Defendants Judge Matthew Green, David Wible, and Derrick Williams; the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. 22) filed by Defendant Ashley Rich; and the motion to dismiss, construed as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (Doc. 24), filed by Defendant Michael Kaoui.[1]  The Court has referred the foregoing motions to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). See S.D. Ala. GenLR 72(b); (7/14/2017 & 7/17/2017 electronic referrals).  The motions have been briefed (*see* Docs. 43, 45, 46, 47, 48, 51) and are now under submission (*see* Doc. 40).  Upon consideration, the undersigned **RECOMMENDS** that the Movant Defendants' motions be **GRANTED**.

## I.    *Applicable Legal Standards*

In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court must construe the complaint in the light most favorable to the Plaintiffs, "accepting all well-pleaded facts that are alleged therein

---

[1] Green, Wible, Williams, Rich, and Kaoui are hereinafter at times collectively referred to as the "Movant Defendants."

to be true." *E.g.*, *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013).

Under Rule 12(c), "judgment on the pleadings is appropriate where no issue of material

fact remains unresolved and the moving party is entitled to judgment as a matter of

law…When reviewing judgment on the pleadings, [the Court] must take the facts

alleged in the complaint as true and view them in the light most favorable to the

nonmoving party." *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999).[2]

"Fed. R. Civ. P. 8(a)(2) requires that a pleading contain 'a short and plain

statement of the claim showing that the pleader is entitled to relief' in order to give the

defendant fair notice of what the claim is and the grounds upon which it rests." *Am.*

*Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (quotation omitted).

" 'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do.' " *Id.* at 1289 (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)). A

complaint's " '[f]actual allegations must be enough to raise a right to relief above the

speculative level ... on the assumption that all the allegations in the complaint are true

(even if doubtful in fact).' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a

motion to dismiss, a complaint must now contain sufficient factual matter, accepted as

---

[2] Though styled as a Rule 12(b) motion to dismiss, Kaoui's motion (Doc. 24) has been construed as a Rule 12(c) motion for judgment on the pleadings because it was filed after Kaoui served his answer to the amended complaint. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made ***before a pleading if a responsive pleading is allowed***." (emphasis added)); *Lillian B. ex rel. Brown v. Gwinnett Cty. Sch. Dist.*, 631 F. App'x 851, 853 (11th Cir. 2015) (explaining that pleadings are closed for purposes of Rule 12(c) "when a complaint and answer have been filed").

true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). While this "plausibility standard is not akin to a 'probability requirement' at the pleading stage, … the standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Moreover, " 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.' " *Id.* at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the plausibility standard, " 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show [n]"—"that the pleader is entitled to relief." ' " *Id.* (quoting *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2))). *Iqbal* "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' " *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Importantly, … courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 679 (quoting *Twombly,* 550 U.S. at 567)).

"[G]enerally, the existence of an affirmative defense will not support a rule 12(b)(6) motion to dismiss for failure to state a claim. A district court, however, may dismiss a complaint on a rule 12(b)(6) motion when its own allegations indicate the

existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993) (quotation omitted)).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ((citation and quotations omitted)). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation omitted).

## II.     *The Complaint*

Per the well-pleaded allegations in Plaintiff D. Angelina Kennedy's amended complaint (Doc. 4), which is the operative pleading in this action,[3] in May 2002 she moved into an apartment complex in Mobile, Alabama, operated by Defendant Warren Properties, Inc.   (Doc. 4 at 3, ¶ 1).   Kennedy alleges that, over the course of several years, Warren Properties and its agents refused her repeated requests for a first-floor apartment to accommodate her medical conditions.   She also alleges that, over the

---

[3] Kennedy timely filed the operative complaint in response to the Court's order that she file an amended complaint to cure certain specified defects (*see* Doc. 3).   That order directed that the amended complaint "shall reproduce the entire original complaint as amended," as required by S.D. Ala. CivLR 15(a), and specified that it would "become the operative complaint in this action."   (*See* Doc. 3 at 7 – 8).   Accordingly, the undersigned has not considered the allegations in Kennedy's initial complaint (Doc. 1), which are deemed abandoned.   *See, e.g.*, *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (per curiam) ("As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.' " (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation and quotation omitted)).

years she has lived at the apartment complex, she experienced a number of instances of harassment and intimidation by other tenants and visitors. Though she complained to Warren Properties staff, those individuals refused to take any meaningful action and ended up allegedly participating in the harassment.

As is relevant to the claims against the Movant Defendants, sometime in 2011 an unknown juvenile white male began stalking and sexually harassing Kennedy, an African-American female. (*See id.*, ¶¶ 2, 5). After Kennedy complained of this to an apartment manager, the manager allegedly revealed Kennedy's identity and apartment number to Defendant Brandi Sheppard, a white female tenant at the complex and the mother of the harassing juvenile male, who "immediately began harassing" her and recruited others to do the same, with the harassment, including the use of "racial slurs," continuing through 2011 and into 2012. (*see id.* at 3 – 7). "By May 19, 2012, the police had told [Kennedy to get surveillance video for [her] protection and [her] property. Brandi Sheppard objected to [Kennedy] having it. She told the supervisor [Kennedy] was videotaping men, women, and children." (*Id.* at 4, ¶ 32).

On July 23, 2012, Kennedy was allegedly assaulted by Defendants Veronica R. Young, Nickie Kidd, Angela Santos, and Duncan Cunningham while in the apartment complex office, where two Warren Property staff members watched without intervening. (*Id.* at 7, ¶ 38). The assault allegedly knocked Kennedy unconscious and knocked out most of a tooth. (*Id.*, ¶¶ 39 – 40). "July 23, 2012, coincidentally, was the day Brandi Sheppard was arraigned in court for the May 19, 2012, harassment of" Kennedy. (*Id.*, ¶ 41). Kennedy alleges that Defendant Green, a judge of the City of Mobile Municipal Court (*see id.* at 2), blocked [her] from signing a warrant for assault against Veronica

Young" and Kennedy "had to fight that." (*Id.* at 7, ¶ 42). This is the extent of Green's alleged involvement in the circumstances underlying Kennedy's claims.

As for Rich, the Mobile County District Attorney; Wible and Williams, both Mobile city attorneys; and Kaoui, a private attorney (*see id.* at 2), Kennedy alleges as follows:

> I was given a Case Number for Witness Intimidation, the District Attorney's office refused. I was told it doesn't fit the criteria for a warrant. Then, Ms Giardino (?) said, we are doing a sweep of the city for "CHEECCCKKKKKSSSS", and hung up. It was days before I figured it out. Over twenty years ago, my oldest sister, who could not read or write had me open a bank account for her with monthly money I gave her, I was teaching high school. Her daughters were going to manage it for her. So she gave them the checkbooks and they wrote checks everywhere. Even my sister got arrested in a store with thos echecks [sic]. I bailed everyone out, paid all the check I knew about. Ashley Rich and Ray Brazel, told me they didn't want me they wanted my sister but wanted me to testify against her. I refused and they came straight for me.

> Brazel had me arrested at every high school I taught, 4 of them. I asked for a photo lineup and handwriting analysis. I passed them all. Ashley Rich was trying to send me to prison for 5 years. They both had evidence that exonerated me and withheld it in retaliation for my temerity to say "no" to people I was supposed to be afraid of and worse, supposed to defer to and become obsequious. I wasn't testifying against my oldest sister, period. They set out to punish and ruin my life, I did nothing to fight back as long as my oldest sister lived, otherwise they would come after her. She died, April 6, 2015. Ashley Rich was contacted by Gary Moore because Warren Properties needed to protect Veronica Young that she would never be prosecuted for assaulting me.

> **July 27, 2012,** I was arrested for Disorderly Conduct, in front of my grown daughter. Their storyline was stereotypical, Black on Black crime, and argument that escalated.

> Brandi Sheppard's son's juvenile trial was set for **July 30, 2012**. After my "disorderly conduct" arrest for being beaten up, there was a mysterious HOLD for me, from 20 years ago. It originated in Ashley Rich's office. I

missed the juvenile trial, Brandi Sheppard told the judge I was locked up in jail. All to discredit me. It was reset.

**July 30, 2012,** with a paid attorney who found the document, all was cleared and paid 20 years ago. The document reads like it got paid on July 30, 2012, smoke and mirrors. A lie.

Ashley Rich, contacted David Wible and Derrick Williams. Derrick Williams threatened, my privately paid attorney, Michael Kaoui, who lied to me, on me, cheated and violated his oath, as well as the law.

…

**September 11, 2012,** Veronica Young was found not guilty of assaulting me. My attorney, unbeknownst to me, David Wible. He stayed out of the courtroom until we were literally in front of the judge. I had not idea what we were doing or who he was until it was too late.

(*Id.* at 7 – 8, ¶¶ 43 – 48, 50 (numbering omitted)).

Kennedy indiscriminately alleges the following causes of action against all named Defendants:

1. Denial of equal protection on basis of race or color in violation the Fourteenth Amendment of the U.S. Constitution, and actionable under 42 U.S.C. § 1983.

2. Conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(2).

3. Conspiracy in violation of 18 U.S.C. §§ 241 and 371

4. Fair Housing Act ("FHA") claims under 42 U.S.C. §§ 3617 and 3631.

The amended complaint seeks declaratory relief, "affirmative relief as may be necessary to remedy Defendants' past discriminatory practices and decisions to ensure defendants do not discriminate on the basis of race in the future," and money damages. (*Id.* at 11).

### III.   *Analysis*

### a.   **Statutes that Do Not Provide Private Causes of Action**

As noted previously, Kennedy's operative complaint alleges causes of action arising under 42 U.S.C. § 3631 and 18 U.S.C. §§ 241 and 371.   As the Movant Defendants correctly argue, and as the Chief District Judge previously noted (*see* Doc. 41 at 7), 18 U.S.C. §§ 241 and 371 are criminal statutes, neither of which provides a private civil cause of action.   *See Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960) ("Sections 241 [and] 371…of Title 18 U.S.C…are criminal in nature and provide no civil remedies.").[4]   The same is true for 42 U.S.C. § 3631.   *United States v. Johns*, 615 F.2d 672, 675 (5th Cir. 1980) ("The legislative history accompanying 42 U.S.C. s 3631…indicates a clear congressional intent to impose **criminal** sanctions…" (emphasis added)); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855–56 (2017) ("[W]hen deciding whether to recognize an implied cause of action, the determinative" question is one of statutory intent. If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute…[T]he judicial task was instead limited solely to determining whether Congress intended to create the private right of action asserted." (citations and quotations omitted).   Accordingly, the undersigned finds that the Movant Defendants' respective motions are due to be **GRANTED** as to Kennedy's claims under 42 U.S.C. § 3631 and 18 U.S.C. §§ 241 and 371

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Kennedy's complaint also cites 42 U.S.C. § 2000h-2. (*See* Doc. 4 at 8). As was previously noted by the Chief District Judge (*see* Doc. 41 at 6 n.6), that statute merely provides a process for the U.S. Attorney General to intervene in equal protection civil rights actions. It too does not create a private cause of action.[5] Accordingly, to the extent Kennedy asserts claims against the Movant Defendants under 42 U.S.C. § 2000h-2, the undersigned finds that such claims are due to be **DISMISSED**.

### b. 42 U.S.C . §§ 1983 and 1985 Claims are Time-Barred

The Movant Defendants all claim that Kennedy's §§ 1983 and 1985 claims are barred by the applicable statute of limitations.[6] The undersigned agrees. " 'All

---

[5] While none of the Defendants specifically raised this argument, the Court's local rules provide that "[w]henever it appears that the Plaintiff's complaint…is frivolous…, the Court upon notice may dismiss or strike the pleading, or any portion of the pleading, in accordance with applicable law." S.D. Ala. CivLR 41(d). To the extent Kennedy disagrees with the undersigned's finding that 42 U.S.C. § 2000h-2 does not provide her with a cause of action, she may object to this determination, as will be explained later herein.

[6] Though Kaoui has argued that the §§ 1983 and 1985 claims against him are time-barred in his Rule 12(c) motion for judgment on the pleadings, he failed to previously plead this affirmative defense in his answer (Doc. 10), as required by Federal Rule of Civil Procedure 8(c)(1). "In general, a party's failure to raise an affirmative defense in the pleadings results in a waiver of the defense." *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1350 (11th Cir. 2007). Nevertheless, "it is settled that a plaintiff is not prejudiced by a defendant's failure to comply with Rule 8(c) if the plaintiff is provided notice of the affirmative defense by some other means." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1322 n.4 (11th Cir. 2006). Here, all other Movant Defendants have put Kennedy on notice of the defense by timely raising it in their Rule 12(b)(6) motions, Kaoui himself has raised the defense in an early stage of the proceedings, discovery has not yet commenced, and Kennedy has had a full opportunity to respond to all Movant Defendants' motions on the issue. *Cf. id.* ("Here, the state raised the affirmative defense in its summary judgment motion only 36 days after its first pleading, and Sweet was given every opportunity to respond. Indeed, he does not allege that he was prejudiced in any way by the delay."). Because Kennedy has not been prejudiced by Kaoui's failure to plead the statute of limitations affirmative defense in his answer, the undersigned finds that Kaoui should be permitted to raise the defense for the first time in his Rule 12(c) motion.

constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought.' " *Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011) (per curiam) (quoting *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008) (quotation omitted)). The same is true for claims brought under § 1985. *See Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996) ("As to the claims brought here under 42 U.S.C. §§ 1983 and 1985, precedent is clear that these are measured by the personal injury limitations period of the state." (footnotes omitted)). "In Alabama,…that limitations period is two years." *Powell*, 643 F.3d at 1303 (citing *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) ("[T]he two-year limitations period ... applies to section 1983 actions in Alabama.")). Here, the operative complaint alleges that the last event underlying Kennedy's claims occurred on September 11, 2012, when "Veronica Young was found not guilty of assaulting" Kennedy and where Defendant "Wible…stayed out of the courtroom until [they] were literally in front of the judge." (Doc. 4 at 8, ¶ 50). Kennedy did not file this action until March 10, 2017, well over two years beyond that last event.[7]

Accordingly, the undersigned finds that the Movant Defendants' motions are due to be **GRANTED** as to the §§ 1983 and 1985 claims against them, as such claims are time-barred.

### c.    Fair Housing Act Claims

All Movant Defendants argue that Kennedy has failed to sufficiently state a claim against them under the anti-retaliation provision of the FHA, 42 U.S.C. § 3617. The

---

[7] Kennedy conclusorily alleges that the "overt and continued violations, for the lost part, ended March 10, 2015" (Doc. 4 at 9), but she provides no specific factual allegations in support. The Court is not required to accept as true such a bare legal conclusion in deciding a motion to dismiss. *Iqbal*, 556 U.S. at 679.

undersigned agrees.

> To state a claim for retaliatory housing discrimination, a plaintiff must assert that a defendant coerced, intimidated, threatened, or interfered with his exercise of rights granted under the FHA...*See* 42 U.S.C. § 3617;...*Dixon v. Hallmark Cos.,* 627 F.3d 849, 858 (11th Cir. 2010). "To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th Cir. 2001) (applying the legal framework used in Title VII cases to an FHA retaliation case).

*Philippeaux v. Apartment Inv. & Mgmt. Co.*, 598 F. App'x 640, 644 (11th Cir. 2015) (per curiam) (unpublished). *See also Sofarelli v. Pinellas Cty.*, 931 F.2d 718, 722 (11th Cir. 1991) ("In order to prevail under the [Fair Housing ]Act, Sofarelli has to establish that race played some role in the actions of Hibbing, Swetay and the neighbors.").

Here, Kennedy's FHA retaliation claims fail against the Movant Defendants because she has failed to allege facts showing a causal link between any activity protected by the FHA and the Movant Defendants' alleged adverse actions. Indeed, accepting the allegations in the operative complaint as true for purposes of the present motions, as the Court must, those allegations establish that any retaliatory activity by Rich, Wible, Williams, and Kaoui was motivated by Kennedy's refusal to testify against her sister for writing bad checks, rather than any FHA-protected activity. Because Kennedy has failed to allege an essential element of an FHA retaliation claim against the Movant Defendants, the undersigned finds that the Movant Defendants' motions are due to be **GRANTED** as to the FHA claims against them.

### d.    Judicial Immunity

Green also argues that he is entitled to judicial immunity. The undersigned

agrees. It is well established that "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the ' "clear absence of all jurisdiction." ' " *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (per curiam) (quoting *Stump v. Sparkman,* 435 U.S. 349, 356–57 (1978)). *Accord Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (per curiam). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin*, 225 F.3d at 1239 (citing *Stump*, 435 U.S. at 356). "The factors which determine whether an act is judicial 'relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity.' " *Scott v. Dixon*, 720 F.2d 1542, 1547 (11th Cir. 1983) (quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)).

Here, Kennedy's operative complaint alleges only that Green "blocked [her] from signing a warrant for assault against Veronica Young." (*Id.* at 7, ¶ 42). The act of issuing, or declining to issue, a warrant is "a function normally performed by a judge[,]" *Scott,* 720 F.2d at 1547, and Kennedy dealt with Green in his capacity as a municipal judge. Moreover, Green acted well within his jurisdiction under Alabama law in declining to issue a warrant. *See* Ala. Code § 12-14-32 ("Municipal judges are authorized to issue arrest and search warrants for municipal ordinance violations returnable to the municipal court and for violations of state law returnable to any state court.").

Factual allegations in Kennedy's response in opposition to Green's motion to dismiss indicate that Green also presided as judge over municipal court criminal

proceedings against several of the individuals who assaulted Kennedy. (*See* Doc. 43 at 8 – 10). Notwithstanding the fact that Kennedy has improperly made these allegations for the first time in a brief in opposition to a motion to dismiss, Green is also entitled to judicial immunity for his actions in presiding as judge over these municipal court prosecutions. *See* Ala. Code § 12-14-1 (establishing municipal courts' jurisdiction over certain criminal prosecutions). Accordingly, the undersigned finds that Green is entitled to judicial immunity, and Green's Rule 12(b)(6) motion to dismiss is due to be **GRANTED** as to all claims for money damages against him in this action on this basis, in addition to the other grounds previously stated.

It is true that "judicial immunity did not protect a state judge from claims for injunctive relief in a § 1983 action." *Bolin*, 225 F.3d at 1240 (citing *Pulliam v. Allen*, 466 U.S. 522 (1984)). Nevertheless, "[i]n order to receive declaratory or injunctive relief, plaintiffs must establish[,]" among other things, "that there is a serious risk of continuing irreparable injury if the relief is not granted…" *Id.* at 1242. "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury. Logically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past. Although past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citations and quotations omitted). Kennedy's operative complaint,

alleging only a single instance of Green's refusal to sign a warrant, has failed to allege sufficient facts indicating that there is a real and immediate threat of future injury from this Defendant. Accordingly, to the extent they are not otherwise due to be dismissed for the reasons previously stated, the claims for injunctive and declaratory relief against Green would be due to be **DISMISSED without prejudice** for lack of standing.[8]

### e.    Prosecutorial Immunity

Wible and Rich argue that they are entitled to prosecutorial immunity. The undersigned agrees.

> Traditional common-law immunities for prosecutors apply to civil cases brought under § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 427–28, 96 S. Ct. 984, 993–94, 47 L. Ed. 2d 128 (1976). "[A]t common law, '[t]he general rule was, and is, that a prosecutor is absolutely immune from suit for malicious prosecution.' " *Malley v. Briggs,* 475 U.S. 335, 342, 106 S. Ct. 1092, 1097, 89 L. Ed. 2d 271 (1986) (quoting *Imbler,* 424 U.S. at 437, 96 S. Ct. at 998). In § 1983 actions, prosecutors have absolute immunity for all activities that are " 'intimately associated with the judicial phase of the criminal process.' " *Van de Kamp v. Goldstein,* 555 U.S. 335, 129 S. Ct. 855, 860, 172 L. Ed. 2d 706 (2009) (quoting *Imbler,* 424 U.S. at 430, 96 S. Ct. at 995); *accord Jones v. Cannon,* 174 F.3d 1271, 1281 (11th Cir. 1999).

> Absolute immunity does not depend entirely on a defendant's job title, but involves a functional approach granting immunity based on conduct. *Jones,* 174 F.3d at 1282. This functional approach looks to "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S. Ct. 2606, 2613, 125 L. Ed. 2d 209 (1993); *accord Imbler,* 424 U.S. at 431 n.33, 96 S. Ct. at 995 n. 33.

> Absolute immunity accordingly applies to the prosecutor's actions "in initiating a prosecution and in presenting the State's case." *Imbler,* 424 U.S. at 431, 96 S. Ct. at 995. Prosecutors are immune for appearances in judicial proceedings, including prosecutorial conduct before grand juries, statements made during trial, examination of witnesses, and presentation of evidence in support of a search warrant during a probable cause

---

[8] Because standing is a threshold jurisdictional question, the Court is obliged to address it *sua sponte,* regardless of whether it is challenged by a party. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005).

hearing. *Burns v. Reed,* 500 U.S. 478, 490–92, 111 S. Ct. 1934, 1942, 114 L. Ed. 2d 547 (1991); *Kalina v. Fletcher,* 522 U.S. 118, 126, 118 S. Ct. 502, 507–08, 139 L. Ed. 2d 471 (1997); *see also Van de Kamp,* 129 S. Ct. at 861. "A prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." *Jones,* 174 F.3d at 1281. Such absolute immunity also "extends to a prosecutor's acts undertaken ... in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Id.* (quotation marks omitted); *accord Rowe v. City of Fort Lauderdale,* 279 F.3d 1271, 1279–80 (11th Cir. 2002) (holding prosecutor who proffered perjured testimony and fabricated exhibits at trial is entitled to absolute immunity, but a prosecutor who participated in the search of a suspect's apartment is entitled to only qualified immunity).

*Rehberg v. Paulk*, 611 F.3d 828, 837-38 (11th Cir. 2010), *aff'd*, 132 S. Ct. 1497 (2012).

Wible and Rich are entitled to absolute prosecutorial immunity on the face of the operative complaint. Wible is alleged only to have "stayed out of the courtroom until we were literally in front of the judge" at Veronica Young's trial, purportedly resulting in Young's acquittal for assaulting Kennedy. Because these actions were undertaken by Wible "in initiating a prosecution and in presenting the State's case" at judicial proceedings, he is entitled to absolute prosecutorial immunity for them. *Imbler,* 424 U.S. at 431. Similarly, Rich's alleged actions involved "initiating a prosecution" against Kennedy's sister, and then Kennedy herself once she refused to testify against her sister. Accordingly, the undersigned finds that Wible and Rich's Rule 12(b)(6) motions to dismiss are due to be **GRANTED** as to the § 1983 claims for money damages against them on the basis of prosecutorial immunity, in addition to the other grounds previously stated.[9]

---

[9] Though Williams has also claimed prosecutorial immunity, his entitlement to this immunity is less clear from the face of the operative complaint. Because the undersigned has already found the § 1983 claims in this action are due to be dismissed as time-barred, the undersigned declines to consider prosecutorial immunity as an alternative basis for dismissing the § 1983 claims against Williams. Moreover, because

Like judicial immunity for state court judges, prosecutorial immunity does not shield a prosecutor from injunctive relief. *Bolin*, 225 F.3d at 1242. As with Green, however, Kennedy has failed to show that she is entitled to declaratory or injunctive relief against any of the other Movant Defendants, as her claims against them are all based on past conduct, and she has failed to allege sufficient facts indicating that there is a real and immediate threat of future injury from any of these Defendants. Accordingly, to the extent they are not due to be dismissed for the other reasons previously stated, the claims for injunctive and declaratory relief against Rich, Wible, Williams, and Kaoui are due to be **DISMISSED without prejudice** for lack of standing.

### f. Additional Allegations & Leave to Amend

Kennedy's responses in opposition to the motions of Green, Wible, Williams, and Kaoui (Docs. 43, 51) present a plethora of additional factual allegations not contained in the operative complaint (Doc. 4).[10] Kennedy has also included a number of evidentiary submissions with her responses, some of which she has requested be filed under seal. (*See* Doc. 43 at 13 – 29). When deciding Rule 12(b)(6) motions, "it is generally true that the 'scope of the review must be limited to the four corners of the complaint.'" *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Pretrial amendment of a pleading must be accomplished in

---

the foregoing analysis provides sufficient reasons to dismiss the operative complaint as to the Movant Defendants, the undersigned does not address the other arguments advanced by the Movant Defendants in support of dismissal.

[10] Kennedy's response to Rich's motion (Doc. 45) is comparatively short and consists only of legal argument.

accordance with Federal Rule of Civil Procedure 15(a) and cannot be effected through a brief in response to a motion to dismiss. *See SE Prop. Holdings, LLC v. Braswell*, Civil Action No. 13-0267-WS-N, 2013 WL 4498700, at *5 n.6 (S.D. Ala. Aug. 21, 2013) ("[A]lthough plaintiff argues in its brief that George Braswell retained control or possession of the real property after transferring it to Vennie Braswell, and that the transfer consumed substantially all of his assets, those facts are not pleaded or supported in the Complaint. The sufficiency of plaintiff's Complaint must be evaluated based on its contents, not those of a subsequent memorandum of law."); *Woodard v. Town of Oakman*, 885 F. Supp. 2d 1216, 1227 n.7 (N.D. Ala. 2012) ("Plaintiffs and Defendant Wilson reference numerous additional facts in their briefs that are not included in the complaint at issue … There is no law in this Circuit that a plaintiff may prevent dismissal for failure to state a claim by adding additional facts in his/her briefs, so long as they are 'consistent' with the complaint. The Court rejects all new factual assertions in both Plaintiffs' and Wilson's briefs."). *Cf. Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

Nevertheless, the general rule in this circuit is that, "[w]hen it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice." *Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010) (per curiam) (unpublished) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.

1991) (per curiam) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (overruling *Bank* as to counseled parties)).  "Dismissal with prejudice is proper, however,…if a more carefully drafted complaint could not state a valid claim."  *Id.*  Accordingly, the undersigned treats the additional allegations in Kennedy's responses as an attempt to amend her complaint, but finds that such amendment would still fail to state a valid claim against any of the Movant Defendants.

Moreover, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56[,]" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  Here, however, only Kennedy has presented evidence in opposition to the present motions, and even consideration of that evidence does not save her complaint from dismissal against the Movant Defendants.

As a threshold matter, none of these additional allegations changes the fact that 42 U.S.C. §§ 2000h-2, 3631 and 18 U.S.C. §§ 241, 371 do not furnish Kennedy a private cause of action.  Furthermore, none of these additional allegations furnishes the missing causal link between activity protected by the FHA and the Movant Defendants' alleged adverse actions.  Accordingly, all of those claims would still be subject to dismissal.  Moreover, Kennedy's response briefs provide no additional factual detail as to Rich's involvement in the actions underlying her claims, so the claims against Rich

would still be due to be dismissed for the reasons previously stated herein.

That leaves the §§ 1983 and 1985 claims against Green, Wible, Williams, and Kaoui. Kennedy provides additional details about the July 23, 2012 assault, events that led up to the assault occurring the previous day, and a number of other incidents involving Warren Property tenants and staff occurring thereafter, all of which are largely irrelevant to the claims against the Movant Defendants. She also provides numerous additional details regarding her interactions with most of the Movant Defendants, again beginning with Green's refusal to issue a warrant. (*Id.* at 6).

Again, Wible's involvement in the events underlying Kennedy's complaint is limited to his role in prosecuting the assault case against Young, with Kennedy providing additional details about the trial and her pre-trial and post-trial interactions with Wible as a complainant and witness. (*See id.* at 7). After Young's trial, Williams took over as prosecutor for the cases against Kennedy's other assailants, beginning with Brandi Sheppard, with Green presiding as judge over those cases. According to Kennedy, Williams soon began favoring the various defendants he was prosecuting over Kennedy, openly conversed with the defendants in court and in front of Kennedy, stopped returning her phone calls, and refused to consult with Kennedy in preparing the prosecution's cases. Kennedy's supplemental allegations and exhibits also make clear that, at some point, Kaoui was appointed by Green as a special prosecutor in the municipal court criminal proceedings due to the deterioration of the relationship between Kennedy and Williams.

Kennedy's new allegations indicate that at least some of the underlying events occurred within the two-year limitations period for §§ 1983 and 1985 claims. However,

even under the new allegations, Green was at all relevant times acting in his capacity as a municipal court judge, and Wible and Williams were at all relevant times acting as advocates for the City of Mobile in prosecuting criminal harassment charges. Thus, Green would still be entitled to judicial immunity, and Wible and Williams would still be entitled to prosecutorial immunity.[11] The new allegations also indicate that Kaoui is entitled to prosecutorial immunity because his actions were undertaken as an appointed municipal court special prosecutor. *See Rehberg*, 611 F.3d at 851 ("As a special prosecutor appointed to stand in for Hodges, Burke receives the full scope of absolute prosecutorial immunity and is absolutely immune for Rehberg's claims of malicious prosecution and the presentation of perjured testimony to a grand jury. For the same reasons explained above, Burke also is absolutely immune for participating in the conspiracy to fabricate Paulk's grand jury testimony against Rehberg."). Moreover, the new allegations still fail to show entitlement to injunctive or declaratory relief because they do not sufficiently show a real and immediate threat of future injury from any of the Movant Defendants.

Finally, because the Movant Defendants are entitled to immunity for all of their actions underlying Kennedy's complaint, those actions cannot be used against them to

---

[11] To the extent Rich is also being sued under § 1983 in her official capacity as Mobile County District Attorney, she is entitled to Eleventh Amendment immunity. *See Williams v. Monroe Cty. Dist. Attorney*, No. 16-10282, 2017 WL 2954569, at *2 (11th Cir. July 11, 2017) (per curiam) (unpublished) (holding that Alabama district attorney's office and its district attorneys acting in their official capacities). To the extent Green, Wible, and Williams are being sued under § 1983 in their official capacities as employees or officers of the City of Mobile, those claims fail because Kennedy has failed to identify a municipal policy or custom that caused her alleged injury. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor... Instead,...we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.").

show liability for conspiracy under § 1985 either. *See Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1282 (11th Cir. 2002) ("It would be cold comfort for a prosecutor to know that he is absolutely immune from direct liability for actions taken as prosecutor, if those same actions could be used to prove him liable on a conspiracy theory involving conduct for which he was not immune. '[T]he vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system' would be unduly chilled. *Imbler v. Pachtman*, 424 U.S. 409, 427–28, 96 S. Ct. 984, 993–94, 47 L. Ed. 2d 128 (1976). That is why acts for which a prosecutor enjoys absolute immunity may not be considered as evidence of the prosecutor's membership in a conspiracy for which the prosecutor does not have immunity."); *Rehberg*, 611 F.3d at 854 ("A person may not be prosecuted for conspiring to commit an act that he may perform with impunity. A prosecutor cannot be liable for 'conspiracy' to violate a defendant's constitutional rights by prosecuting him if the prosecutor also is immune from liability for actually prosecuting the defendant." (citing *Rowe,* 279 F.3d at 1282) (citation and quotation omitted)); *Gottschalk v. Gottschalk*, No. 10-11979, 2011 WL 2420020, at *7 (11th Cir. June 16, 2011) (per curiam) (unpublished) (holding that the reasoning of *Rowe* "applies with equal force in the context of judicial immunity").

Accordingly, the undersigned finds that permitting Kennedy to amend her complaint to state a claim against the Movant Defendants would be futile. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004) ("[A] district court may properly deny leave to amend the complaint…when such amendment would be futile. This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." (citation and quotation omitted)).

Therefore, the Court need not grant her leave to amend prior to dismissing her operative complaint against the Movant Defendants.

## IV. *Conclusion*

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that the Court **GRANT** the motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. 19, 22) of Defendants Judge Matthew Green, David Wible, Derrick Williams, and Ashley Rich, and the motion to dismiss, construed as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (Doc. 24), of Defendant Michael Kaoui, without permitting leave to amend. The undersigned further **RECOMMENDS** that any claims for injunctive and declaratory relief against the Movant Defendants not dismissed under Rule 12(b)(6) or Rule 12(c) be **DISMISSED without prejudice** *sua sponte* for lack of standing.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the

absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 7th day of November 2017.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**